```
                  UNITED STATES DISTRICT COURT
                    DISTRICT OF CONNECTICUT

JAMES A. HARNAGE,              :
     Plaintiff,                :
                               :
v.                             :    Case No. 3:19cv938(AWT)
                               :
THOMAS KENNY, et al.,          :
     Defendants.               :
```

**ORDER ON MOTION FOR IN FORMA PAUPERIS AND
<u>INITIAL REVIEW ORDER</u>**

On June 18, 2019, the plaintiff, James A. Harnage, filed a complaint <u>pro se</u> pursuant to 42 U.S.C. § 1983 against the Connecticut Department of Correction ("DOC")[1] and Garner Correctional Institution ("Garner") Captain Thomas Kenny, Garner Warden Anthony Corcella, former Commissioner Scott Semple, former Commissioner Rollin Cook, and Garner Warden Hannah for violating his Eighth Amendment right to protection against cruel and unusual punishment. Compl. [Doc.#1]. Specifically, he claims that, by allowing Native American inmates to practice "smudging" in the small courtyard attached to his housing unit, the defendants have exposed him to harmful "second hand smoke," which exacerbates his preexisting sinus and respiratory conditions. <u>See</u> Compl. ¶¶ 19-47.

---

[1] The court must dismiss the complaint against the DOC because a state agency, is not a "person" subject to suit under 42 U.S.C. § 1983. <u>See</u> <u>Will v. Michigan Dep't of State Police</u>, 491 U.S. 58, 71 (1989) (state and state agencies not persons within meaning of 42 U.S.C. § 1983).

Harnage (who has three strikes under 28 U.S.C. § 1915(g)) also filed a motion for leave to proceed in forma pauperis.  Mot. for Leave to Proceed In Forma Pauperis [Doc.#2].

In an order dated November 4, 2019, the court denied Harnage's motion to proceed in forma pauperis on the basis of failure to satisfy the exception to the three strikes rule under 28 U.S.C. § 1915(g) by showing facts that he was in "imminent danger of serious physical injury."  Order [Doc. #7].  After Harnage filed an appeal, the Second Circuit concluded that Harnage's allegations satisfied the imminent harm danger exception of section 1915(g) and remanded the case to this court.  Second Cir. Ruling [Doc. #15].  Accordingly, consistent with the Second Circuit's ruling, the court hereby concludes that Harnage has satisfied the imminent danger exception of section 1915(g) and may proceed in forma pauperis.  The court now conducts its initial review of Harnage's allegations.

    **I.   LEGAL STANDARD**

Pursuant to section 1915A of title 28 of the United States Code, the court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be

granted, or that seeks monetary relief from a defendant who is immune from such relief. Although detailed allegations are not required, the Complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. Bell Atlantic v. Twombly, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic, 550 U.S. at 570. Nevertheless, it is well-established that "[p]ro se complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" Sykes v. Bank of America, 723 F.3d 399, 403 (2d Cir. 2013) (quoting Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006)).

## II. FACTUAL ALLEGATIONS

Harnage suffers from numerous medical conditions including sinus problems and conditions that make it difficult for him to breathe due to allergies to dust, pollen and airborne particles. Compl. at ¶ 10. Harnage was untreated and undiagnosed for tuberculosis and still carries an inactive virus. Id. at ¶ 16. Thus, exposure to environmental contaminates poses a risk of

harm to Harnage.  Id.

In October 2018, Harnage was assigned to the A-Pod at Garner where he was exposed to "toxic smoke" during Native American prayer services that entered his housing unit causing him to suffer from congestion, shortness of breath, migraine headaches, irritated eyes and throat, nausea, and emotional distress.  Id. at ¶¶ 17-19, 24-25, 46-47.  The smoke is able to reach Harnages's unit through a "misshapen door" that is not airtight and through a pair of ventilation hoods that Harnage believes provide air intake for his housing unit.  Id. at ¶¶ 27, 31.

Harnage has filed Inmate Administrative Remedy forms with each defendant about the smoke.  Id. at ¶¶ 23, 44.  The defendants either asserted the religious freedom of the other inmates or asserted that the condition was not serious and that the courtyard venting could not possibly allow smoke into the housing unit.  Id. at ¶ 44.

### III. DISCUSSION

Harnage's allegations raise Eighth Amendment concerns about his conditions of confinement.  He also alleges violation of Article First, sections 8 and 9 of the Connecticut Constitution.  Harnage seeks damages, a declaratory judgment, and injunctive

relief.  Compl. at ¶ 48.

**A.   Eighth Amendment**

The Eighth Amendment protects prisoners from "cruel and unusual punishment" at the hands of prison officials.  <u>Wilson v. Seiter</u>, 501 U.S. 294, 296-97 (1991); <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976).  Although the Constitution does not require "comfortable" prison conditions, the Eighth Amendment imposes certain duties on prison officials to "ensure that inmates receive adequate food, clothing, shelter and medical care," and that prison officials "take reasonable measures to guarantee the safety of the inmates."  <u>Farmer v. Brennan</u>, 511 U.S. 825, 832–33 (1994) (internal quotation marks and citations omitted).  To state a deliberate indifference to health or safety claim under the Eighth Amendment, an inmate must demonstrate both an objective and a subjective element.

To meet the objective element, an inmate must allege that he was incarcerated under conditions that resulted in a "sufficiently serious" deprivation, such as the denial of a "life[ ] necessit[y]" or a "substantial risk of serious harm." <u>Id.</u> at 834 (internal quotation marks and citations omitted). In <u>Helling v. McKinney</u>, the Supreme Court held that the Eighth Amendment protects prisoners from an official's deliberate indifference to conditions posing an unreasonable risk of

5

serious damage to the prisoner's future health.  509 U.S. 25, 33–35 (1993).

To establish the subjective element, an inmate must allege that the defendant prison officials possessed culpable intent, that is, the officials knew that he faced a substantial risk to his health or safety and disregarded that risk by failing to take corrective action.  See Farmer 511 U.S. at 834, 837.  Thus, an allegation of "mere negligen[t]" conduct is insufficient.  Id. at 835.  Rather, the subjective element requires that a plaintiff allege that prison officials acted with "a mental state equivalent to subjective recklessness, as the term is used in criminal law."  Salahuddin v. Goord, 467 F.3d 263, 280 (2d Cir. 2006).

Poor air quality in a facility for a prolonged period can be an unconstitutional condition of confinement.  See Benjamin v. Fraser, 343 F.3d 35, 52 (2d Cir. 2003) (constitutional violation based on inadequate ventilation at eleven facilities as result of "the presence of large numbers of inoperable windows, clogged or dirty ventilation registers and exhaust vents in showers and cells, and poor air quality"); McTerrell v. Koenigsmann, No. 1:18-CV-01028 EAW, 2019 WL 2511426, at *12 (W.D.N.Y. June 18, 2019) (citing Benjamin).

Here, Harnage's allegations are sufficient to support an

Eighth Amendment claim based on the deliberate indifference of defendants Captain Kenny, Warden Corcella, former Commissioner Semple, former Commissioner Cook, and Garner Warden Hannah to Harnage's exposure to smoke in his housing unit. Accordingly, Harnage's Eighth Amendment claim may proceed against the defendants in their individual capacities for damages.

**B.   Official Capacity Claim**

Harnage asserts official capacity claims against the defendants. Specifically, he seeks a declaratory judgment that his conditions of confinement violate the Constitution and an injunctive order for the defendants to move smudging to another location where the smoke will not contaminate the housing unit.

As an initial matter, any claims for money damages against the defendants, who are state employees, in their official capacities must be dismissed as barred by the Eleventh Amendment. See, e.g. Kentucky v. Graham, 473 U.S. 159, 169 (1985).

Harnage may, however, proceed against defendants in their official capacities to the extent he alleges an ongoing constitutional violation. See Va. Office for Prot. & Advocacy v. Stewart, 563 U.S. 247, 254-55 (2011) (citing Ex parte Young, 209 U.S. 123 (1908)). In Ex parte Young, 209 U.S. 123 (1908), the United States Supreme Court recognized a limited exception

to the Eleventh Amendment's grant of sovereign immunity from suit to permit a plaintiff to sue a state official acting in an official capacity for prospective injunctive relief for continuing violations of federal law.  Id. at 155-56; In re Dairy Mart Convenience Stores, Inc., 411 F.3d 367, 371 (2d Cir. 2005).  "A plaintiff may sue a state official acting in his official capacity—notwithstanding the Eleventh Amendment—for 'prospective injunctive relief' from violations of federal law." In re Deposit Ins. Agency, 482 F.3d 612, 617 (2d Cir. 2007).

However, this exception to Eleventh Amendment immunity "does not permit judgments against state officers declaring that they violated federal law in the past."  See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, 506 U.S. 139, 146 (1993); Green v. Mansour, 474 U.S. 64, 68 (1985) ("We have refused to extend the reasoning of Young ... to claims for retrospective relief."). Declaratory relief operates in a prospective manner to allow parties to resolve claims before either side suffers significant harm. See In re Combustion Equip. Assoc. Inc., 838 F.2d 35, 37 (2d Cir. 1988).

Harnage's allegations may be construed to assert an ongoing Eighth Amendment violation, so the court will permit his official capacity claims for declaratory and injunctive relief to proceed beyond initial review.  However, Harnage may not

8

proceed against former Commissioners Semple or Cook or former Warden Corcella, who do not have the capacity to provide the requested relief. See Ex parte Young, 209 U.S. at 157 (defendant official must have some connection with enforcement of allegedly unconstitutional act).[2] He may proceed, however, against current Garner Warden Hannah and Interim Commissioner Angel Quiros. See Fed. R. Civ. P 25(d) ("An action does not abate when a public officer who is a party in an official capacity ... ceases to hold office while the action is pending[,] [and] [t]he officer's successor is automatically substituted as a party."). Accordingly, the court will instruct the clerk to serve this complaint on Warden Hannah and Interim Commissioner Angel Quiros in their official capacities.

### C. State Law Claims

Harnage alleges state law claims of violation of Article First, sections 8[3] and 9[4] of the Connecticut Constitution.[5]

---

[2] See https://portal.ct.gov/DOC (showing that Angel Quiros is the current Interim Commissioner and that Warden Hannah is the current Warden of Garner.

[3] Article First, Section 8 provides in pertinent part: "No person shall be ... deprived of life, liberty or property without due process of law...."

[4] Article First, Section 9 provides: "No person shall be arrested, detained or punished, except in cases clearly warranted by law."

[5] To the extent Harnage seeks prospective relief against the defendants in their official capacities for violations of the Connecticut Constitution or state law, those claims are barred by the

A federal court's exercise of supplemental jurisdiction is governed by 28 U.S.C. § 1367(a), which provides that "district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  Under § 1367(c), a "district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.  Additionally, a district court should not decline to exercise supplemental jurisdiction under section 1367(c) unless it also determines that doing so would not promote economy, convenience, fairness, and comity.  Shahriar v. Smith & Wollensky Rest. Grp., Inc., 659 F.3d 234, 245 (2d Cir. 2011).

The Connecticut Supreme Court recognized a private cause of action for monetary damages under Article I, sections 7 and 9 of

---

Eleventh Amendment under Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 106 (1984).  See Vega v. Semple, 963 F.3d 259, 284 (2d Cir. 2020).

the Connecticut Constitution where the claims arose out of unreasonable searches and seizures and unlawful arrest by police officers.  Binette v. Sabo, 244 Conn. 23, 47-49 (1998).  In reaching its decision, the Connecticut Supreme Court "emphasize[d] that [its] decision to recognize a Bivens-type remedy in this case does not mean that a constitutional cause of action exists for every violation of our state constitution."  Id. at 47.

Harnage's claim concerning his unconstitutional conditions of confinement presents a new context for a claim under Article First, sections 8 and 9.  This court has routinely declined to recognize a private right of action under Article First, sections 8 and 9 of the Connecticut Constitution.  See Velez-Shade v. Population Mgmt., No. 3:18CV1784(JCH), 2019 WL 4674767, at *14 (D. Conn. Sept. 25, 2019) (noting "the court cannot locate any cases in which a Connecticut state court has recognized a private right of action for money damages under Article First, § 9 of the Connecticut Constitution for a claim that prison officials subjected an inmate to unconstitutional conditions of confinement."); Richard v. Strom, No. 3:18-CV-1451 (CSH), 2018 WL 6050898, at *8 (D. Conn. Nov. 19, 2018) (concluding "[t]here is no established private right of action under the religious discrimination, due process, or

equal protection provisions (Article First, Sections 3, 8, and 20)"); Crowley v. Town of Enfield, No. 3:14CV01903 (MPS), 2015 WL 4162435, at *3 (D. Conn. July 9, 2015) (declining to recognize a private right of action under Article First, Sections 8 and 20); Lopez v. Smiley, 375 F. Supp. 2d 19, 23-26 (D. Conn. 2005) (declining to exercise supplemental jurisdiction over novel, complex and undeveloped claims under Article First, Sections 4, 5, 7, 8, 9, and 14).

Therefore, the court concludes that it is inappropriate to exercise supplemental jurisdiction over these claims brought under the Connecticut Constitution raising new and undeveloped issues under state law. See 28 U.S.C. § 1367(c)(1) ("The district courts may decline to exercise supplemental jurisdiction over a claim" that "raised a novel or complex issue of State Law...."). Accordingly, the court dismisses these claims without prejudice.

**IV.  CONCLUSION**

In accordance with the foregoing analysis, the court enters the following orders:

(1) The court's prior order denying Harnage's motion to proceed in forma pauperis [Doc.#7] is hereby VACATED, and the

motion to proceed in forma pauperis [Doc.#2] is hereby GRANTED.

(2)  The case shall proceed on Harnage's Eighth Amendment claims against Captain Thomas Kenny, Garner Warden Anthony Corcella, former Commissioner Scott Semple, former Commissioner Rollin Cook, and Garner Warden Hannah in their individual capacities; and against Interim Commissioner Angel Quiros and Warden Hannah in their official capacities.

(3) The Clerk shall verify the current work address for Captain Thomas Kenny, Garner Warden Anthony Corcella, former Commissioner Scott Semple, former Commissioner Rollin Cook, and Garner Warden Hannah with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the complaint and this Order to them at their confirmed address within **twenty-one (21) days** of this Order, and report on the status of the waiver request on the **thirty-fifth (35th) day** after mailing.  If a defendant fails to return the waiver request, the Clerk shall make arrangements for in-person individual capacity service by the U.S. Marshals Service on that defendant, and that defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(4) The Clerk shall prepare a summons form and send an official capacity service packet, including the complaint and

13

this Order on the United States Marshal Service. The U.S. Marshal is directed to effect service of the complaint on defendants Interim Commissioner Angel Quiros and Garner Warden Hannah in their official capacities at the Office of the Attorney General, 165 Capitol Avenue, Hartford, CT 06106, within **twenty-one (21) days** from the date of this Order and file a return of service within **thirty (30) days** from the date of this order.

(5) The Clerk shall send a courtesy copy of the complaint and this Order to the DOC Office of Legal Affairs.

(6) The defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them.  If the defendants choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. The defendants may also include any and all additional defenses permitted by the Federal Rules.

(7) Discovery, according to Federal Rules of Civil Procedure 26-37, shall be completed within **six months (180 days)** from the date of this Order.  Discovery requests need not be filed with the court.

(8) The parties must comply with the District of

Connecticut "Standing Order Re: Initial Discovery Disclosures," which will be sent to both parties by the court. The Standing Order can also be found at

http://ctd.uscourts.gov/administrative-standing-orders.

(9) All motions for summary judgment shall be filed within **seven months (210 days)** from the date of this Order.

(10) According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within **twenty-one (21) days** of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(11) If the plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. The plaintiff must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If the plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address. He should also notify the defendants or defense counsel of his new address.

(12) The plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court.  The plaintiff is advised that the Program may be used only to file documents with the court.  Local court rules provide that discovery requests are not filed with the court.  D. Conn. L. Civ. R. 5(f).  Therefore, discovery requests must be served on defendants' counsel by regular mail.

It is so ordered.

Signed at Hartford, Connecticut, this 19th day of January 19, 2021.

_____/s/AWT_____
Alvin W. Thompson
United States District Judge