UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JAMES A. HARNAGE,                  :
                                   :
    *Plaintiff*,                    :
                                   :
v.                                 :        No. 3:19-cv-938 (AWT)
                                   :
THOMAS KENNY, et al.,              :
                                   :
    *Defendants*.                   :

## RULING AND ORDER
## ON MOTIONS TO QUASH AND FOR PROTECTIVE ORDER

    Pending before the Court are plaintiff's Motion to Quash Subpoena (Doc. No. 114) and

Motion for Protective Order (Doc. No. 115), and the Motion to Quash and for Protective Order

(Doc. No. 106) filed by the subpoenaed non-party Cicchiello & Cicchiello, LLC (hereinafter

"C&C").  The issue is whether the attorney-client privilege protects certain communications

exchanged between plaintiff and C&C concerning funds that C&C held in trust for plaintiff and

disbursed per his instructions.  For the reasons that follow, the motions are GRANTED in part

and DENIED in part, and C&C is ordered to produce the copies of the client ledger and

correspondence in question with only the limited redactions specified below.

## I.    BACKGROUND

    Pro se plaintiff James A. Harnage, a state prisoner, brought this action against various

corrections officers claiming violation of his Eighth Amendment rights due to smoke exposure in

his housing unit.  *See* Initial Review Order, Doc. No. 24.  Plaintiff was granted leave to proceed

in forma pauperis pursuant to 28 U.S.C. § 1915 on the basis of his June 4, 2019 affidavit stating

that he lacked sufficient resources to pay the filing fee.  Doc. No. 2 and 24.  From 2012 to the

present, plaintiff has filed 40 actions in this Court.  In many of these, he was granted leave to

proceed without paying the filing fee due to indigence, as provided in § 1915.[1]  In several other

cases, plaintiff has not only been permitted to proceed in forma pauperis but also has been

appointed pro bono counsel.[2]

In November 2021, defendants filed a motion requesting that plaintiff post security for

costs in the sum of $500 based upon plaintiff's representation in another case that an attorney

was holding funds on his behalf.[3]  Doc. No. 84.  The clerk of the court granted the motion

pursuant to Local Rule 83.3 and ordered plaintiff to post a $500 bond.  Doc. No. 86.  Plaintiff

then filed a motion to waive security for costs on the grounds that he "is an indigent inmate with

no source of regular income who has been granted in forma pauperis in this action."  Doc. No.

93, at 1.  He attached a sworn declaration averring that the C&C law firm had received federal

COVID-19 stimulus funds totaling $3200 on his behalf but had disbursed the funds per his

instructions "to pay other debts, obligations, expenses, and subscription renewals; [and]

outstanding obligations to the law firm," as well as a filing fee in another litigation.[4]  Doc. No.

93, Harnage Decl. ¶¶ 10, 28.  He further asserted that he did not receive e-filing notices of the

---

[1] Such cases include, but are not limited to, *Harnage v. Torres*, 3:15-cv-1843 (AWT); *Harnage v. Kelley*, 3:16-cv-1536 (AWT); *Harnage v. Coletti*, 3:16-cv-1537 (AWT); *Harnage v. Wu*, 3:16-cv-1543-AWT; *Harnage v. Murphy*, 3:16-cv-1651 (AWT); *Harnage v. Lightner*, 3:17-cv-263 (AWT); *Harnage v. Giles*, 3:17-cv-285 (AWT); *Harnage v. Pillai*, 3:17-cv-355 (AWT); and *Harnage v. Shari*, 3:17-cv-356 (AWT).

[2] Such IFP cases in which plaintiff was represented by appointed pro bono counsel include the *Wu*, *Lightner*, *Giles*, *Pillai*, and *Shari* cases listed in footnote 1.

[3] *See Harnage v. Zavaigne*, 3:21-cv-738 (AWT), at ECF 8.

[4] See *Harnage v. Lamont*, 3:21-cv-163 (AWT).  In that case, plaintiff was initially granted leave to proceed in forma pauperis, but leave was revoked in a November 10, 2021 Ruling pursuant to the "three strikes" provision of 28 U.S.C. § 1915(g).  The Ruling cited four actions and six other appeals brought by plaintiff that were dismissed as frivolous.  *See* 3:21-cv-163 (AWT), at ECF 112.  The docket indicates that plaintiff subsequently paid that $400 filing fee in December 2021.

defendants' motion for security for costs, or the Court's order granting that motion, until November 17, 2021, by which time he had "already issued payout requests" to C&C "that brought my calculated balance down to zero, to the best of my knowledge and belief."  *Id.* at ¶¶ 21, 24-25.

On December 2, 2021, defendants served a Rule 45 subpoena on C&C seeking information related to its handling of plaintiff's funds or assets.  *See* Doc. No. 106, at 14-20.  On December 9, Attorney Lorenzo J. Cicchiello filed the pending motion to quash or for protective order asserting that some of the responsive materials were privileged attorney-client communications.  Doc. No. 106.  On December 13, plaintiff filed his own motions to quash the subpoena and for a protective order, arguing that the subpoena sought to invade the attorney-client privilege.[5]  Doc. No. 114 and 115.

In connection with the pending motions, Attorney Lorenzo Cicchiello described the relevant services the firm performed for plaintiff as follows:

> Neither the undersigned or the undersigned's law office represent the plaintiff in the above captioned matter and am not familiar with the nature of this action.
> . . .
> The undersigned and the undersigned's office does provide some basic services to plaintiff in the form of copying, bank deposits, mailing, correspondence and occasional research activities at the request of plaintiff.  Plaintiff has instructed the undersigned and the undersigned's office to charge fees for these services and has authorized the payment of fees for these services.

---

[5] Plaintiff's motion for protective order also argues that the subpoena creates a conflict between federal and state law because the defendants, who are state employees, are seeking information regarding his use of federal stimulus funds.  That argument misapprehends the obstacle branch of conflict preemption.  "Obstacle analysis . . . precludes state law that poses an 'actual conflict' with the overriding federal purpose and objective."  *In re MTBE Prod. Liab. Litig.*, 725 F.3d 65, 101 (2d Cir. 2013).  Here, the provisions under which defendants have sought security for costs are federal rules, *see* Fed. R. Civ. P. 54(d); D. Conn. L. Civ. R. 83.3, so no state law is implicated, and there is not even a putative conflict.  *Compare, e.g., Lamar v. Hutchinson*, No. 4:21-cv-347, 2021 WL 4047158, at *15 (E.D. Ark. Sept. 3, 2021) (analyzing potential conflict between federal stimulus bill and Arkansas state statute authorizing Arkansas Department of Corrections to seize prisoners' stimulus funds for court fines, fees, costs, or restitution).

Doc. No. 106, at ¶¶ 3 and 5.  Likewise, Attorney Gary A. Cicchiello filed a supporting affidavit confirming that his firm "does not represent" plaintiff in this action, and that he personally has "no knowledge of the nature of this action."  Doc. No. 142, at ¶ 6.  He also confirmed that his firm received stimulus funds for plaintiff and "issued several checks on his behalf."  *Id.* ¶¶ 11-16.

In March and April 2022, in partial compliance with the subpoena, C&C produced redacted copies of the client ledger with client correspondence from March 2019 to November 2021, along with a privilege log asserting that the redacted portions are subject to attorney-client privilege.  *See* Doc. No. 142, 152.  Pursuant to the Court's Order, Doc. No. 152, C&C then submitted unredacted copies to the Court, which the undersigned has reviewed *in camera*. Specifically, the Court has reviewed the client ledger maintained by C&C for the plaintiff for the period from November 2012 to December 2021, as well as letters between plaintiff and Attorney Gary Cicchiello from March 5, 2019 to November 14, 2021.

## II.  <u>LAW</u>

A motion to quash a subpoena is "entrusted to the sound discretion of the district court." *In re Fitch, Inc.*, 330 F.3d 104, 108 (2d Cir. 2003).  The issue before the Court is whether the client ledger and correspondence between plaintiff and Attorney Gary Cicchiello are protected from discovery in this action under the attorney-client privilege.

As summarized by the Second Circuit, a party invoking the privilege must show: (1) a communication between client and counsel, (2) that was intended to be kept confidential and was in fact kept confidential, and (3) that was made for the purpose of obtaining or providing legal advice.  *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011) (citing *In re County of Erie*, 473 F.3d 413, 418 (2d Cir. 2007)).  The underlying purpose of the privilege is "to encourage full and frank communication between attorneys and their clients and thereby promote broader public

4

interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). However, because the privilege renders otherwise relevant information undiscoverable, courts "construe the privilege narrowly and apply it 'only where necessary to achieve its purpose.' " *In re County of Erie*, 473 F.3d at 418 (quoting *Fisher v. United States*, 425 U.S. 391, 403 (1976)). The party asserting the privilege bears the burden of establishing its elements. *Id.* "A document . . . is not privileged merely because it was sent to or received by an attorney and the client." *Vidal v. Metro-N. Commuter Ry. Co.*, No. 3:12-cv-248 (MPS)(WIG), 2014 WL 413952, at *5 (D. Conn. Feb. 4, 2014).

## III.   DISCUSSION

### A.   Communications not for the purpose of soliciting legal advice

#### 1.   Business communications

After review *in camera*, the Court finds that the correspondence between Mr. Harnage and Attorney Gary Cicchiello was exchanged between an attorney and client and was intended to be confidential. That leaves the question of "whether the communication was generated for the purpose of obtaining or providing legal advice as opposed to business advice." *In re County of Erie*, 473 F.3d at 419. "Fundamentally, legal advice involves the interpretation and application of legal principles to guide future conduct or to assess past conduct. . . . It requires a lawyer to rely on legal education and experience to inform judgment." *Id.* (citations omitted). However, the concept is broader insofar as legal analysis may be informed by practical considerations, such as feasibility, risks, costs, alternatives, and collateral implications. *Id.* at 420-21. The test for privilege is whether the "predominant purpose" of the communication is to render or solicit legal advice. *Id.* at 420. If so, these practical considerations and caveats are part of the legal advice, and the communication is privileged. *Id.*

In his filings, plaintiff colloquially describes C&C as his "general counsel."  Doc. No. 93, Harnage Decl. ¶ 6.  While that term traditionally refers to an attorney employed by a business entity, it is analogous insofar as a general counsel's duties often extend to non-legal matters that are not within the ambit of the privilege.  As the Second Circuit has emphasized, "the privilege is triggered only by a client's request for legal, as contrasted with business, advice."  *In re Grand Jury Subpoena*, 731 F.2d 1032, 1037 (2d Cir. 1984).  "[A]n attorney's dual legal and non-legal responsibilities may bear on whether a particular communication was generated for the purpose of soliciting or rendering legal advice."  *In re County of Erie*, 473 F.3d at 421.  The predominant purpose determination "may also be informed by the overall needs and objectives that animate the client's request for advice."  *Id.*

Turning to the correspondence that the Court has reviewed *in camera*, its predominant purpose was not the solicitation of any advice, business or otherwise.  Instead, it primarily discusses logistics for obtaining and disbursing the federal stimulus funds that C&C received on plaintiff's behalf, and C&C's fee for those services.  In that undertaking, C&C was acting as plaintiff's agent or trustee, rather than legal advisor, and their discussion of such business is not privileged.  *See In re County of Erie*, 473 F.3d at 421 ("When an attorney is consulted in a capacity other than as a lawyer, as (for example) a policy advisor, media expert, business consultant, banker, referee or friend, that consultation is not privileged.")  The business nature of the communications is consistent with Attorney Lorenzo Cicchiello's characterization that the firm provided "basic services" to plaintiff "in the form of copying, bank deposits, mailing, correspondence and occasional research activities at the request of plaintiff."  Doc. No. 106, at ¶¶ 3, 5 (emphasis added).  The only item on that list with an ostensibly legal dimension is research activities, and the correspondence at issue makes only a single, self-contained reference to such

activity.[6]  Because the correspondence was generated predominantly for the purpose of effectuating business, rather than soliciting or rendering legal advice, it is not privileged.

The client ledger showing receipt and disbursement of plaintiff's funds from C&C's trustee account is not privileged for similar reasons.  "Administrative documents such as time records, diary entries, time sheets, and billing reports fall under the attorney-client privilege only if they reveal litigation strategy or other confidential information." *Strauch v. Computer Sciences Corp.*, No. 3:14-cv-956 (JBA), 2020 WL 1812715, at *2 (D. Conn. Apr. 9, 2020) (citation cleaned up).  The client ledger here reveals no such privileged information.

### 2.  Plaintiff's comments on fee and cost issues

Notwithstanding that the predominant purpose of the correspondence was effectuating business, there are certain passages that warrant additional scrutiny.  These include plaintiff's remarks on fee and cost issues, including as to defendants' discovery of his receipt of stimulus funds, their intent to seek security for costs in this action, and his resistance thereto.  However, although those statements comment on legal proceedings, their plain language is merely conversational, and cannot reasonably be construed as soliciting legal advice.  *See In re Grand Jury Subpoena*, 731 F.2d 1032, 1037 (2d Cir. 1984) ("[T]he privilege is triggered only by a client's request for legal . . . advice.").  Moreover, as Attorney Lorenzo Cicchiello has represented in his motion and Attorney Gary Cicchiello has sworn in his affidavit, the attorneys do not represent plaintiff for purposes of this action and have no knowledge of the nature of this action.  *See* Doc. No. 106 ¶ 3 and Doc. No. 142 ¶ 6.  Viewing the statements in their plain language, in the context of the correspondence, and in the context of plaintiff's relationship with

---

[6] As discussed in subsection III.C of this Ruling, the Court will not order disclosure of that particular passage on grounds of privilege.

C&C, the Court concludes that they were not generated for the purpose of soliciting legal advice and, therefore, are not privileged.  *See In re County of Erie*, 473 F.3d at 421 (an attorney's "dual legal and non-legal responsibilities" and "the overall needs and objectives that animate the client's request for advice" may inform the question of whether communication was generated for the purpose of soliciting or providing legal advice).

### B.  At-issue waiver

Even if the privilege could apply to plaintiff's statements regarding his use of the stimulus funds and his related motives, they would still be subject to discovery because plaintiff has put those matters at issue.  "[T]he privilege may implicitly be waived when [a litigant] asserts a claim that in fairness requires examination of protected communications."  *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991) (in criminal prosecution for securities fraud, defendant's direct testimony that he believed his actions were legal opened the door to cross-examination regarding his conversations with counsel regarding the legality of his schemes); *see also*, *e.g.*, *Davidson v. Goord*, 215 F.R.D. 73, 78 (W.D.N.Y. 2003) (by claiming that prison officials unconstitutionally refused to deliver attorney-client correspondence, and that this injured plaintiff by impairing his prosecution of prior claim, plaintiff put content of privileged correspondence at issue).  In his motion to waive security for costs, plaintiff has asserted that he "is an indigent inmate with no source of regular income who has been granted in forma pauperis in this action," and so should be excused from complying with the court's order to post $500 as security for costs.  Doc. No. 93, at 1.  In his supporting declaration, he characterizes his expenditures of the stimulus funds as payment of "debts, obligations, expenses, and subscription renewals; [and] outstanding obligations to the law firm," as well as a filing fee in another litigation.  Doc. No. 93, Harnage Decl. ¶¶ 10, 28.  He also makes factual assertions as

to when he obtained notice that the funds might be implicated in these proceedings, and he avers that he "reasonably believe[d]" he had no "duty or obligation to inform the defendants of the proceeds." *Id.* ¶¶ 18-28.  After placing the nature, timing, and propriety of his expenditures at issue, plaintiff cannot fairly invoke the attorney-client privilege to shield direct evidence of those matters.  If plaintiff's motion to waive security for costs is granted, defendants will be deprived of security ordinarily available under Local Rule 83.3, so they are entitled to investigate the veracity of plaintiff's supporting declaration in order to obtain a fair adjudication of the issue.[7]

---

[7] Plaintiff's motions and declaration do not address whether he had a duty to either inform the Court of his receipt of the $3200 while he was litigating in forma pauperis ("IFP") or, alternatively, to deposit the funds in his prisoner trust account so that a percentage could be applied toward the filing fee in this action pursuant to the statutory mechanism.  *See* 28 U.S.C. § 1915(b)(2) ("After payment of the initial partial filing fee, the prisoner [proceeding in forma pauperis] shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account.  The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.").

Most decisions addressing an IFP prisoner's failure to disclose assets focus on the truthfulness of the initial IFP application, which is not in dispute here.  However, those decisions do indicate that manipulating the balance of the prisoner account by holding funds elsewhere for the prisoner's personal use at the time of the IFP application may constitute bad faith that is grounds to dismiss an IFP action.  *See, e.g., Cuoco v. U.S. Bureau of Prisons*, 328 F. Supp. 2d 463, 468 (S.D.N.Y. 2004) (granting motion to dismiss IFP action with prejudice where prisoner "created an illusion of poverty through a series of deceptive acts," including directing $13,500 in settlement funds to her mother's address and declining authorization for prison officials to accept deposits to her prison account); *see also MacKinnon v. Gray*, No. 1:18-cv-964 (DAD)(HBK), 2022 WL 198397, at *8 (E.D. Cal. Jan. 21, 2022) (recommended ruling, later adopted, dismissing IFP action with prejudice where prisoner schemed to keep his prison account empty for purposes of IFP application by having his mother deposit funds for him into other inmate's accounts).

As for funds received after the IFP application is granted, the Second Circuit has confirmed that courts are bound by the § 1915(b)(2) mechanism with respect to funds in the prisoner account, clarifying that an IFP prisoner need not apprise the court of deposits into the account, that the court cannot accelerate § 1915(b)(2) installment payments from the account, and that an IFP prisoner may make other use of account funds in the meantime.  *See Arzuaga v. Quiros*, 781 F.3d 29, 34-35 (2d Cir. 2015).  However, the Second Circuit has not addressed a situation in which an IFP prisoner obtains new funds and holds them outside his prisoner account without disclosing

C. **Passages seeking legal advice**

Separately, the correspondence contains miscellaneous instances in which plaintiff addressed privilege issues relating to the subpoena, requested research and advice on questions of discovery procedure, and asked the attorney to consider representing him in a potential new lawsuit. Because those passages were generated for the purpose of soliciting legal advice, they are privileged, regardless of the fact that C&C apparently neither provided any advice nor accepted the potential new representation. *See United State v. Dennis*, 843 F.2d 652, 656-57 (2d Cir. 1988) (statements soliciting legal advice while potential client was seeking representation were privileged, even though attorney ultimately was not retained). Therefore, the Court will not order disclosure of those passages, as specified below.

---

them to the court. There are two recent decisions by the Seventh Circuit indicating that such conduct may affect whether an IFP action should continue to proceed. *See Robertson v. French*, 949 F.3d 347, 352-53 (7th Cir. 2020) ("As long as any such new assets are deposited in the prisoner's institutional trust account, we conclude that the act of deposit is enough disclosure to satisfy the statute. Although we do not need to address what might happen if the assets were held outside the institution, we freely acknowledge that this would present a materially different problem."); *Childress v. Kerr*, 803 F. App'x 949, 952 (7th Cir. 2020) (affirming dismissal with prejudice of IFP action where prisoner failed to disclose, and made efforts to conceal, his "improved financial situation" after his IFP application was granted).

The Court has considered these questions while examining whether the correspondence at issue here implicates the crime-fraud exception to the attorney-client privilege. *See Michael Grecco Prods. Inc. v. Alamy Inc.*, No. 1:80-cv-3260 (PKC)(JO), 2020 WL 5848613 (E.D.N.Y. Oct. 1, 2020) (Orenstein, M.J.) (issuing order, later affirmed, requiring production of privileged communications after finding probable cause to suspect that the communications were in furtherance of a scheme to mislead the court by producing an inapposite version of the contract at issue) (citing *Abbott Labs. v. H&H Wholesale Servs., Inc.*, No. 17-cv-3095 (CBA)(LB), 2018 WL 2459271, at *5 (E.D.N.Y. Mar. 9, 2018) ("[C]ourts have applied the crime-fraud exception where a party's actions in discovery are found to be 'calculated and purposeful litigation misconduct.' ")). However, given the Court's conclusion herein that the subpoenaed correspondence is generally not privileged and, even if so, would be discoverable because plaintiff put it at issue, the Court makes no present determination as to (i) whether plaintiff was obligated to inform the Court of the new funds, or (ii) whether the crime-fraud exception applies.

**D.  Discussion of settlement position**

Lastly, there is a passage in which plaintiff describes his position on settlement discussions in this and other cases.  That information is not responsive to the subpoena, which was focused on plaintiff's receipt of stimulus funds, and the Court is mindful of the "strong public policy" of encouraging settlement.  *See Export-Import Bank of Republic of China v. Central Bank of Liberia*, No. 1:15-cv-9565 (ALC), 2017 WL 6398726, at *2 (S.D.N.Y. Dec. 13, 2017) (collecting cases).  Those factors are sufficient to warrant redaction of plaintiff's comments on settlement at this juncture, as specified below, and the Court does not reach the question of whether they are subject to the attorney-client privilege.

IV.    CONCLUSION

For all the foregoing reasons, Cicchiello & Cicchiello, LLC's Motion to Quash Subpoena or for Protective Order (Doc. No. 106), plaintiff's Motion to Quash (Doc. No. 114), and plaintiff's Motion for Protective Order (Doc. No. 115) are GRANTED in part and DENIED in part.

The Court further ORDERS as follows. On **June 28, 2022**, Cicchiello & Cicchiello, LLC shall produce to defendants' counsel the full set of materials that were submitted to the Court for *in camera* review, except that the following passages may be redacted:

1.  Client ledger. Redact entries prior to 2019, which are non-responsive.

2.  Letter dated 3/5/19.

   Page 1, paragraph 2: Redact all sentences after "…expressed gratitude."

   Page 2, paragraph 1: Redact the sentence preceding "I am also steadfast…"

3.  Letter dated 6/15/21. Page 1: Redact the sentence after "…finds you well."

4. <u>Letter dated 9/16/21</u>. Page 2: Redact all sentences preceding "Till next time!"

5. <u>Letter dated 11/12/21</u>.

       Page 1: Redact all sentences after ". . . stimulus monies."

       Page 2: Redact numbered paragraph "3".

All other content from the review set shall be produced without redaction.

This is not a recommended ruling. This is an order regarding case management which is reviewable pursuant to the "clearly erroneous" statutory standard of review. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); and D. Conn. L. Civ. R. 72.2. As such, it is an order of the Court unless reversed or modified by the District Judge upon motion timely made.

**SO ORDERED**, on this 7th day of June, 2022, at Bridgeport, Connecticut.

                                       */s/  S. Dave Vatti*
                                       Hon. S. Dave Vatti
                                       United States Magistrate Judge